JOSEPH & FEISS COMPANY, APPELLANT, *v.* LINDLEY, TAX COMMR., ET AL., APPELLEES.

(No. 45868—Decided July 21, 1983.)

*Mr. Charles F. Glander* and *Mr. Robert D. Markus,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. James C. Sauer,* for appellees.

JACKSON, J. This is an appeal from a decision of the Board of Tax Appeals. The appellant, Joseph and Feiss Company, contends that appellee, the Tax Commissioner of Ohio, has overvalued property subject to the personal property tax imposed by R.C. Chapter 5711.

Appellant is a manufacturer of men's clothing. It maintains a large inventory of finished products at two locations within Cuyahoga County, in the city of Cleveland and the city of Brooklyn. These inventories are subject to the personal property tax.[1] At issue in the case at bar is the true

---

[1] The first paragraph of R.C. 5711.16 makes manufacturers' inventories subject to the personal property tax:

"A person who purchases, receives, or holds personal property for the purpose of adding to its value by manufacturing, refining, rectifying, or combining different materials with a view of making a gain or profit by so doing is a manufacturer. When such person is required to return a statement of the amount of his personal property used in business, he shall include the average value, estimated as provided in this section, of all articles purchased, received, or otherwise held for the purpose of being used, in whole or in part, in manufacturing, combining, rectifying, or refining, and of all articles which were at any time by him manufactured or changed in any way, either by combining, rectifying, refining, or adding thereto, which he has had on hand during the year ending on the day such property is listed for taxation annually, or the part of such year during which he was engaged in business. He shall separately list finished products not kept or stored at the place of manufacture or at a warehouse in the same county."

value of the inventories during 1976 and 1977, for purposes of the personal property tax.

R.C. 5711.16 provides, in relevant part:

"The average value of such property shall be ascertained by taking the value of all property subject to be listed on the average basis, owned by such manufacturer on the last business day of each month the manufacturer was engaged in business during the year, adding the monthly values together, and dividing the result by the number of months the manufacturer was engaged in such business during the year. The result shall be the average value to be listed. A manufacturer shall also list all engines and machinery, and tools and implements, of every kind used, or designed to be used, in refining and manufacturing, and owned or used by such manufacturer."

R.C. 5711.18 states that property used in business shall be listed at book (cost) value less book depreciation, unless this method is greater or less than the true value of the property:

"In the case of personal property used in business, the book value thereof less book depreciation at such time shall be listed, and such depreciated book value shall be taken as the true value of such property, unless the assessor finds that such depreciated book value is greater or less than the then true value of such property in money."

Ohio Adm. Code 5703-3-27 also provides that the average value of the taxable inventory of a manufacturer is its book value, to the extent that the books and records of the company reflect the true value of the inventory. The rule states:

"The average value of taxable inventory of a manufacturer, required to be reported at its true value as provided by Sections 5711.22 and 5711.18, Revised Code, must be ascertained in accordance with Section 5711.16, Revised Code, and this Rule. The monthly values used in determining the average inventory must reflect the books and records of the taxpayer, to the extent that such books and records reflect the true value of the inventory.

"In determining the true value as provided in Sections 5711.22 and 5711.18, Revised Code, the taxpayer must employ a method that reflects full absorption of all direct and indirect costs and expenses. All fixed, semi-variable and variable costs and expenses incurred in the manufacture of such inventory must be included in determining the true value thereof."

There is no dispute in the case at bar over the book value of the appellant's inventory. For example, for tax year 1976, the average book value for the appellant's Cleveland inventory, on hand at the end of each accounting period[2] in 1976, was $4,542,343. The taxpayer claimed that a significant portion of its inventory was sold at a loss, and that these losses represent "true value" below "book value." With this proposition the Tax Commissioner agrees. The commissioner also accepts the appellant's figures for the losses it incurred in the sale of its inventory; for example, in 1976, in Cleveland, the average loss or "writedown" on inventory during each accounting period was $158,936. The Tax Commissioner, and the Board of Tax Appeals, determined the average value of the inventory on hand at the end of each of appellant's accounting periods by subtracting the average writedown incurred in any one accounting period from the average book value of the inventory at the end of that accounting period. To continue the use of our example, the average true value of the Cleveland inventory in 1976 was, according to the Tax Commissioner, $4,542,343 (book value) less $158,936 (writedown), equal to $4,383,407.

---

[2] The appellant computed inventory values eleven times during the year, instead of monthly. The Tax Commissioner has consented to the appellant's accounting procedure.

The appellant had originally accumulated all writedowns and subtracted these amounts from the value of each periodic inventory. This method grossly understated the value of inventories. The appellant abandoned this method, and admitted that it had undervalued its inventory. However, it differs with the method employed by the commissioner in one respect. It requested the commissioner to take the rate of inventory turnover into account, in determining the correct amount of writedowns and the true value of the inventory.

In 1976, for example, an individual manufactured item remained in the Cleveland inventory an average of 3.83 accounting periods (approximately four months). This figure is obtained by comparing the book value of the inventory to receipts from sales. On the average, the value of the inventory is almost four times the amount of sales during any single accounting period.

Under the commissioner's method of allowing for writedowns, the writedown is not allowed for the first three accounting periods that this "average" item is in the inventory. During the fourth accounting period, when the item is sold, the writedown is allowed in the amount for which the item sells below book value.

The appellant contends that this item should be written down for the entire period of time that it remains in its inventory. Appellant notes that an item which is eventually sold at a loss should be valued at loss value, and not book value, the entire time that it remains in the inventory.

The appellant therefore contends that the average writedown for inventory of the Cleveland facility in 1976 should be $158,936 times 3.83, equal to approximately $608,000. This figure represents the amount of *all* writedowns which, on the average, accrued to inventory items on hand at any one time. In other words, at the end of any particular accounting period, goods having a book value of $4,500,000 were on hand in the Cleveland inventory. During that single accounting period, on the average, $159,000 worth of writedowns (losses on sales) occurred. Because it took 3.83 accounting periods to sell off an entire inventory, however, it was estimated on the average, that out of $4,500,000 worth of inventory, there would over the course of time be $608,000 worth of writedowns.

The commissioner contends, and the Board of Tax Appeals held, that writedowns could not be considered to have occurred until the accounting period in which an item is sold. Until that time the item must be carried at book value for purposes of the personal property tax.

## I

In its first two assigned errors, the appellant contends that the decision of the Board of Tax Appeals is unreasonable, unlawful, and against the weight of the evidence.[3]

The court of appeals must affirm a decision of the Board of Tax Appeals if it is found to be "reasonable and lawful," and it may reverse if the decision is "unreasonable or unlawful." R.C. 5717.04. A decision may also be reversed if it is against the manifest weight of the evidence. *Ace Steel Baling, Inc.* v. *Porterfield* (1969), 19 Ohio St. 2d 137 [48 O.O.2d 169]. The facts in the case at bar are not in

---

[3] The appellant's first and second assignments of error are as follows:

"I. The decision of the Board of Tax Appeals is unreasonable and unlawful in that the values given to the Joseph & Feiss Company's inventories are in excess of such property's true value.

"II. The decision of the Board of Tax Appeals is against the manifest weight of the evidence and values the Joseph & Feiss Company's inventories in excess of the statutory standard."

dispute, however, and therefore the decision of the board is not subject to reversal or modification on the ground that it is against the manifest weight of the evidence. The only issue before this court is the lawfulness and reasonableness of the board's decision not to employ the "turnover" method advocated by the appellant to estimate the "true value" of the inventory.

The closest case on point is *Grabler Mfg. Co.* v. *Kosydar* (1975), 43 Ohio St. 2d 75 [72 O.O.2d 42]. At issue in that case was the value of machinery and equipment belonging to the Grabler Manufacturing Co., as of December 31, 1968, for purposes of the 1968 personal property tax. On March 31, and May 16, 1969, Grabler sold the equipment and machinery below book value in an arms-length transaction. The Supreme Court held, in its syllabus, that such a sale is the best evidence of "true value":

"For personal property tax purposes, the best method of determining value is the actual sale of such property on the open market and at arms length, between one who is willing to sell, but not compelled to do so, and one who is willing to buy, but not compelled to do so. * * *"

It also stated that the sales, which occurred three and five months after the tax year had ended, were "within a reasonable time" of the tax listing day, and were the best evidence of the true value of the property for 1968. *Id.* at 78.

The *Grabler* case is analogous to the case at bar. True value may be determined retroactively from a sale which occurs three to five months later. In the case at bar, there is no question but that a large portion of the appellant's inventory,

on hand at any particular time, will be sold at a loss within four months.

In an analogous case, the Supreme Court held that the Board of Tax Appeals may not "rigidly" apply its rules of valuation, where special circumstances exist which would make such application unjust. The court held in *PPG Industries* v. *Kosydar* (1981), 65 Ohio St. 2d 80 [19 O.O.3d 268], paragraph two of the syllabus, as follows:

"In determining the true value in money of machinery and equipment for tax assessment purposes, the Tax Commissioner in applying the '302 Computation' directive which prescribes an annual depreciation rate in lieu of book depreciation must adjust such rate not only in unusual or special circumstances but also whenever it appears that rigid application of the directive will create an unjust or unreasonable result."

The appellant has demonstrated that the Tax Commissioner and the board employed an unreasonable method of computing the average true value of the appellant's inventory. On remand, the board is instructed to recompute the appellant's deficiency, taking into account the average amount of writedowns which accrue over the turnover period of the inventory. The appellant's first assigned error is well-taken.

## II

In its third assignment of error,[4] the appellant contends that the failure of the Tax Commissioner and the Board of Tax Appeals to adopt the "turnover method" of accounting for losses on inventories violates the Equal Protection Clauses of the state and federal Constitutions.

This court declines to find that the

---

[4] The appellant's third assignment of error is as follows:

"III. As a result of the Board of Tax Appeals decision affirming the Tax Commissioner's valuation of the Joseph & Feiss Company's inventories, Ohio's inventory taxation

statutes have been applied by the board in an unconstitutional manner contrary to Article I, Section 2 of the Ohio Constitution, the Fourteenth Amendment of the United States Constitution and Article XII, Section 5 of the Ohio Constitution."

84

decision of the administrative authorities in any way violated the appellant's fundamental freedoms, or that it invidiously discriminated against the appellant. Had · the commissioner's method of determining inventory writedowns been enacted into law by the Ohio Legislature, we would not consider such legislation to be unconstitutional.

The third assigned error is not well-taken.

This court simply finds that the commissioner's method of determining writedowns for business inventory is not consistent with R.C. 5711.16 and 5711.18, which require the commissioner to determine the "true value" of such property.

Accordingly, the decision of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Decision reversed and cause remanded.*

CORRIGAN, P.J., and NAHRA, J., concur.