EBSCH et al., Appellants,

v.

TANPNAICHITR, Admr., Appellee, et al.

[Cite as *Ebsch v. Tanpnaichitr* (1992), 81 Ohio App.3d 507.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62782.

Decided June 29, 1992.

*Law Offices of Epp & Hamilton* and *James L. Hamilton,* for appellants.

*Jacobson, Maynard, Tuschman & Kalur Co., L.P.A., Joyce E. Carlozzi* and *Steven J. Hupp,* for appellee.

---

*Per Curiam.*

Plaintiffs-appellants Amber and Cynthia Ebsch ("Ebsch") appeal, on the accelerated docket, the granting of summary judgment in favor of defendant-appellee V.S. Tanpnaichitr, administratrix of the estate of Dr. Pricha Tanpnaichitr, M.D. ("Dr. Tan").[1] For the reasons adduced below, we affirm.

A review of the record reveals that Dr. Tan, a board certified pediatrician, treated Amber from February 11 to July 25, 1988. By letter dated August 9, 1988, Cynthia Ebsch terminated her physician/patient relationship with Dr. Tan and requested that Amber's medical records be forwarded to a new pediatrician. This letter provided:

"Dear Dr. Tan:

"It is with careful consideration and regret, that I must inform you of my decision to change pediatritions [*sic*] for my daughter Amber Ebsch. *I also want to stress the fact that this decision has nothing to do with your services or the way we were treated in your office. I was very pleased with both.* My husband was just informed that he will be working the day shift

---

1. Amber Ebsch, date of birth February 11, 1988, is the minor daughter of Cynthia Ebsch. Doctor Tan died on August 15, 1990.

from now on, and I will no longer have transportation across town to your office. You will be receiving $45.00 from the insurance company that is handling the auto accident we were in on July 23, 1988. *Please send me a final bill for the remaining balance, and I will submit a check to you.* I apologize for any inconvenience this may have caused you, and I thank you for your patience, and understanding with the insurance confusion.

"Thank you!

"Cynthia J. Ebsch

"P.S. Would you please transfer Amber's records to the office of Dr. William Gillard, 7441 Ridgewood Dr., # 249, Parma, Ohio 44129, *at your earliest convenience.*" (Emphasis added).

A copy of this handwritten letter is attached to Dr. Tan's motion for summary judgment at Exhibit "B."

Due to a balance owing on the Ebsch account, the medical records were not forwarded. After four notices of payment went unpaid, Dr. Tan turned the overdue account over to a collection agency in late January 1989.[2] An itemized statement of the Ebsch account is attached to Dr. Tan's motion for summary judgment at Exhibit "A."

By letter dated March 21, 1989, Dr. Tan was notified by plaintiffs' counsel that they had been retained " * * * to represent their interests against both yourself and Ohio Recovery Services, for specific refusal to release medical records of their daughter, Amber Ebsch. As you stated to me this morning, you refused to release those records without the payment by the Ebschs of the alleged outstanding balance of One Hundred Thirty–Eight Dollars ($138.00).

"Please also be advised that we represent the Ebsch family regarding the alleged outstanding debt. * * * "

The remainder of this letter by counsel requested a copy of the billing statement and any insurance claims made on the account.

By letter dated March 22, 1989, Dr. Tan notified plaintiffs' counsel as follows:

"Dear Mr. Hamilton:

"I am writing to inform you that Mrs. Cynthia Ebsch did not come in to pick up the medical record of her daughter yesterday as I was informed by you that it is needed urgently.

---

2. The collection agency was a party-defendant in the case below. A judgment in the amount of $10,000 was received by plaintiffs against the collection agency on October 17, 1991.

"Again, I like to reaffirm you that it is my policy to release the medical record in case of an urgent need. Please advise your client that Amber Ebsch's record has been ready for this need too.

"Sincerely,

"Pricha Tan, M.D."

A copy of this letter is attached to Dr. Tan's motion for summary judgement at Exhibit "D."

Amber's medical records were received by her mother at Dr. Tan's office on March 23, 1989. On the receipt for the records, the mother handwrote the phrase "This will be taken to Dr. Gillard." A copy of this receipt is attached to Dr. Tan's motion for summary judgment at Exhibit "E."

Plaintiffs filed their original complaint on July 2, 1990. On October 3, 1990, a suggestion of death was filed regarding Dr. Tan. On December 7, 1990, an amended complaint was filed naming the estate of Dr. Tan as a defendant. Three causes of action were submitted against Dr. Tan's estate.

The first cause of action pled the following with respect to Dr. Tan:

"3. Defendant's decedent, Pricha Tanpnaichitr, M.D. (hereinafter Dr. Tan), was at all times pertinent a physician duly licensed to practice his profession as provided by the laws of the State of Ohio and engaged in the practice of his profession at 13535 Detroit Avenue, Lakewood, County of Cuyahoga and State of Ohio. Decedent died August 15, 1990.

"* * *

"5. Plaintiffs state that all times herein mentioned Defendant's decedent, Dr. Tan, held himself out to the public as a physician skilled in the care of patients and skilled in the care of people who are suffering from illness or who need medical attention and/or care or treatment. By reason thereof, Defendant's decedent, *Dr. Tan, was employed by Plaintiff, Cynthia, for the purpose of caring for her daughter, Amber, and by virtue of such employment, said Dr. Tan did agree and undertook to carefully and skillfully attend to and provide services* to Plaintiff herein, and *to render proper care* and treatment to Plaintiff, Amber, herein.

"6. Plaintiffs state during the period beginning February 1988 and continuing through August 1988, Plaintiffs were the patients of the Defendant's decedent, Dr. Tan. Plaintiffs state said Defendant's decedent, *Dr. Tan, in endeavoring to care for and treat Plaintiff, Amber, did not exercise or possess the degree of care, skill, diligence or knowledge ordinarily exercised or possessed by a physician in the care and treatment of patients such as Plaintiff in that,* among other things, Defendant's decedent, *Dr. Tan, although being duly notified by Plaintiff Cynthia (in writing) of their intent*

*to switch to a new pediatrician, refused to obey and comply with such written instructions requesting that Plaintiff Amber's medical records be forwarded to the new treating physician* and specifically refused to send such records until such time as the medical bill due to Defendant's decedent, Dr. Tan, by the Plaintiffs was paid in full. *Such actions were in direct contradiction of the Principles of Professional Conduct set forth by the American Medical Association.*

"7. As a direct and proximate result of the Defendant's decedent's, Dr. Tan's, negligent refusal, the Plaintiffs were forced to suffer continued physical distress, together with mental anguish and emotional distress." (Emphasis added.)

The second cause of action provides the following with respect to Dr. Tan:

"9. Defendant's decedent, Dr. Tan, *breached his express contract with Plaintiffs to provide reasonable medical care to Plaintiffs,* inclusive of forwarding Plaintiff's medical records to the subsequent treating physician.

"10. As a direct and proximate result of Defendant's decedent's breach of express contract with Plaintiffs, Plaintiffs were forced to suffer physical stress, mental anguish and emotional distress." (Emphasis added.)

The third cause of action provides the following with respect to Dr. Tan:

"12. Defendant's decedent, Dr. Tan, knew that Plaintiff, Amber, suffered from a growth disorder, and knew, or should have known, that the subsequent attending physician would need all growth records to adequately diagnose and treat said disorder; that Defendant's decedent, Dr. Tan, willfully, wantonly and maliciously refused to forward said medical records, although requested to do so in writing, to the great detriment of Plaintiffs herein and *in direct contradiction to the Principles of Professional Conduct of the American Medical Association.*

"13. As a direct and proximate result of Defendant's decedent's, Dr. Tan's, willful, wanton and malicious actions, done with the intent to create harm to Plaintiff Amber, Plaintiffs suffered severe emotional distress, mental anguish, humiliation, embarrassment, and interference with their contractual rights to third parties." (Emphasis added.)

The complaint and amended complaint contained no exhibits or attachments.

With leave of court, Dr. Tan's estate filed, on April 25, 1991, a motion for summary judgment with an affidavit and exhibits attached. With leave of court, plaintiffs filed, on June 13, 1991, an unsupported brief in opposition to summary judgment. On June 24, 1991, with leave of court, a reply to the brief in opposition was filed by the estate.

The motion for summary judgment was granted on July 10, 1991 without opinion. A final judgment entry was entered against the collection agency on October 17, 1991. Plaintiffs-appellants filed their notice of appeal on November 15, 1991.[3]

Appellants raise three assignments of error for review.

## I

"The trial court erred in granting defendant-appellee's, estate of Prich Tan, M.D., motion for summary judgment in ruling that plaintiffs needed a medical expert necessary to establish a prima facie claim of medical negligence, and the trial court erred in ordering plaintiffs to produce a medical expert report."

Our review is guided by language contained in *Noll v. Nezbeth* (1989), 63 Ohio App.3d 46, 51–52, 577 N.E.2d 1137, 1140–1141:

"It is well-settled that summary judgment should be used cautiously so as not to usurp a litigant's right to a trial. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 13 OBR 8, 467 N.E.2d 1378. The purpose of such an endeavor is not to try issues of fact, but rather to determine whether triable issues of fact exist. *Viock, supra.* This court has summarized a court's role in a summary judgment exercise as follows:

" 'It is well established that summary judgment is to be used cautiously, *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7 [13 OBR 8, 467 N.E.2d 1378], and is to be granted only when the court is convinced that there are no genuine issues of material fact in dispute; that the moving party is entitled to judgment as a matter of law; and that, construing the evidence most strongly in favor of the nonmoving party, reasonable minds could come to but one conclusion and that conclusion is in favor of the moving party. *Petrey v. Simon* (1984), 19 Ohio App.3d 285 [19 OBR 456, 484 N.E.2d 257]. Thus, if any genuine issues of material fact are in dispute, summary judgment must be denied.' " *Lewkowski v. Goodwin* (Oct. 3, 1988), Lake App. No. 13–097, unreported, 1988 WL 102615. See, also, *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904.

Additionally, "[a] motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, citing *Celotex v.*

---

**3.** Exhibits C, D and E attached to appellants' brief were not before the trial court and thus are not part of the record for review. These exhibits will be disregarded in our analysis.

*Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. See, also, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114, 526 N.E.2d 798, 800.

In the first cause of action, which is the basis for this assignment and subsequent summary judgment ruling, plaintiffs pled a cause of action for medical malpractice against Dr. Tan in that he allegedly "did not exercise or possess the degree of care, skill, * * * ordinarily exercised or possessed by a physician in the care and treatment of patients such as plaintiff" by his refusal to obey and comply with the request to transfer the medical record of Amber.

"As the United States Supreme Court pointed out in *Davis v. Virginian Railway Co.* (1960), 361 U.S. 354, 357 [80 S.Ct. 387, 389, 4 L.Ed.2d 366, 369], proof of malpractice requires (1) evidence as to the recognized standard of the medical community and (2) a showing that the physician negligently departed from those standards in the treatment of the patient. Under Ohio law, the plaintiff in a medical malpractice case must establish, by expert testimony, the requisite standard of skill and care of physicians in the medical community, the negligent failure of the defendant to render treatment in conformity with the standard and the proximate causation of the plaintiff's damages by the defendant. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127 [75 O.O.2d 184, 346 N.E.2d 673]. The failure to establish the recognized standard of the medical community by expert testimony is fatal to a malpractice case. *Id.* The only exception to this rule is where the lack of skill or care of the physician is so apparent as to be within the comprehension of the layman. * * *" *Steinmetz v. Francis J. Lowry, D.D.S. & Assoc., Inc.* (1984), 17 Ohio App.3d 116, 118–119, 17 OBR 179, 181, 477 N.E.2d 671, 674.

Here, the plaintiffs failed to produce an expert witness to establish the recognized standard of care relating to retention of medical records by a treating physician and otherwise support their malpractice claim with evidence, not mere allegations, of malpractice and ensuing damages. Accordingly, the court did not err in granting summary judgment.

This assignment is overruled.

## II

"The trial court erred in granting defendant's motion for summary judgment upon the basis that Dr. Tan did not have a duty to release his medical records to plaintiffs and plaintiffs did not suffer a legally cognizable injury."

■ Dr. Tan was under no legal duty recognized by Ohio statute or common law to transfer, upon request, the medical records of his patient. Any such duty for the transmission of the records has its foundation in the Principles of Professional Conduct set forth by the American Medical Association. The Principles cited by appellants provide:

"3. RECORDS OF PATIENTS AND SUCCEEDING PHYSICIANS. At the request of the patient, preferably in writing, reports should be immediately sent to the doctor then in charge of the patient. The diagnosis of the patient's ailment is paramount in arriving at the proper treatment to be rendered, and all information which aids the physician should be furnished so that proper treatment or advice can be given without delay. Whether the contents of the report are to be given to the patient rests with the decision of the doctor who knows all the circumstances involved in the situation. (House of Delegates, 1946)

" * * *

"5. COPY OF PATIENT'S RECORD TO ANOTHER PHYSICIAN. The interest of the patient is paramount in the practice of medicine, and everything that can reasonably and lawfully be done to serve that interest must be done by all physicians who have served or are serving the patient. When a colleague who is presently treating a patient requests records from another physician who has formerly treated the patient, that former physician should promptly make his records available to the attending physician. * * * "

Absent a legal duty, summary judgment was proper.

Furthermore, summary judgment was proper on the issue of damages where plaintiffs failed to produce for the record any evidence of injury or damage as a result of the seven-month retention of the medical records by Dr. Tan. Plaintiffs also failed to produce any evidence of Amber's alleged growth defect or that Dr. Tan had, or should have had, knowledge of that defect. Absent some evidence of damage, by way of affidavit or other properly admissible evidence, summary judgment was proper.

This assignment is overruled.

### III

"The trial court erred in granting defendant's decedent, Dr. Tan, summary judgment on plaintiffs' severe emotional distress claim since Dr. Tan's conduct was not outrageous and plaintiffs' mental anguish was not so severe that no reasonable person could be expected to endure it."

■ In order to recover for a cause of action based on intentional infliction of emotional distress, four elements need to be met:

a. That the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff;

b. That the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;

c. That the actor's actions were the proximate cause of plaintiff's psychic injury;

d. That the mental anguish suffered by plaintiff is serious and of a nature that no reasonable man could be expected to endure it. *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 11 OBR 63, 463 N.E.2d 98.

The term "serious emotional distress" is defined as follows:

"Serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, paragraph 3a of the syllabus.

Plaintiffs, in responding to the motion for summary judgment, completely failed to rebut by affidavit or other admissible evidence Dr. Tan's assertions that: (a) his conduct was not outrageous and (b) that the mother did not suffer a severe and debilitating emotional injury as a result of the retention of the records. See *Wing v. Anchor Media, Ltd. of Texas, supra.* Lacking a genuine issue of a material fact on an element needed for the cause of action, summary judgment was properly granted on that cause of action.

This assignment is overruled.

*Judgment affirmed.*

DYKE, P.J., JAMES D. SWEENEY and HARPER, JJ., concur.