DECISION AND JOURNAL ENTRY
Brenda Tollett ("Tollett") filed a wrongful death claim against various defendants after her son Keith Tollett was stabbed to death by defendant Rachel Bokor on February 2, 1991. Tollett is the administratrix of Keith Tollett's estate. At various times over the course of several years, the Lorain County Court of Common Pleas entered grants of summary judgment in favor of defendants Debbie Green, Amherst Farmers' Market, Inc., Darin Dostal, Tammy Kazmierczak, Heidi Shreve, Leanne Pelz, and Darren Wells.[1] Tollett reached settlement agreements with Rachel Bokor and Lisa Bokor. After the resolution of the last claim, Tollett filed the instant appeal, challenging the trial court's grant of summary judgment to the various defendants. This court affirms in part and reverses in part.
 I.
The death of Keith Tollett ("Keith") occurred in the early morning hours of February 2, 1991. At around 7:30 a.m. on February 1, 1991, Darin Dostal, Defendant Rachel Bokor ("Bokor"), and Jennifer Phillips, all arrived at Lorain County Joint Vocational School, where they were students. They met in the hallway of the school, and they decided to skip school and party. They proceeded to the home of Phillips' boyfriend, Stephen Bray, who resided with his father and Bray's aunt, Debbie Green. After arriving at the Bray/Green home, the three students persuaded Bray to go with them to Amherst Farmers' Market ("the Market") and purchase beer. Either Dostal, who was eighteen years old, or Bray, who was over twenty-one, purchased the beer. Bokor, Dostal, Bray, and Phillips then returned to the Bray/Green residence, and drank beer. Green was home during the period in question, after having worked an evening shift at her job. Green claims that she was asleep and did not know that they were there.
At approximately 10 to 11 a.m., Bokor and Dostal decided to leave, and they took some of the beer with them to the home of Darren Wells, where his girlfriend Leanne Pelz also lived.[2]
Pelz was home and Bokor and Dostal visited with Pelz for approximately two hours. Bokor and Dostal brought their beer into the Wells/Pelz residence, and they may have consumed some of the beer during their visit. At approximately 1 p.m., Dostal drove Bokor to the Cleveland home of Bokor's father and stepmother, Lisa Bokor. Bokor drank more beer en route. Bokor's father was not home, but Bokor and Dostal visited with Lisa Bokor. Bokor and Dostal drank more beer at Lisa Bokor's house, and Bokor passed out for a time. After about four hours at Lisa Bokor's house, Dostal drove Bokor to the Grafton home of Tammy Kazmierczak. Bokor took a cooler of beer from Lisa Bokor's house, and Bokor drank beer en route to Kazmierczak's house. Bokor and Dostal arrived at Kazmierczak's house at about 8 p.m. Kazmierczak later said Bokor was drunk when she arrived at Kazmierczak's. Bokor drank beer while at Kazmierczak's home. At approximately 9:30 p.m., Dostal drove Bokor, Kazmierczak, and two of Kazmierczak's girlfriends to Heidi Shreve's house. The group took with them a cooler of beer, and Bokor consumed more beer en route. Once at Shreve's house, Bokor consumed more beer in Shreve's presence. The group stayed at Shreve's house for approximately half an hour. Then Dostal drove Bokor, Kazmierczak, and Kazmierczak's two friends to Wells' house. Bokor again consumed beer en route.
Bokor was clearly intoxicated when she arrived at the Wells home at approximately 11 p.m. Bokor's boyfriend, Keith Tollett, was also at Wells' house. Keith and Bokor had a quarrel, and Bokor tried to leave the house. Keith stopped Bokor in the breezeway outside the house, and dragged her back inside. The couple went into a back bedroom and continued their argument. After Bokor stated that she was so angry she could kill Keith, Keith went to the kitchen and got a steak knife, gave it to Bokor, and said, "Here, do it." Bokor complained, "That's not a knife." She then went to the kitchen and got a bigger knife. Bokor later claimed that she swung the knife at Keith, trying to scare him. She swung the knife twice, but on the third time, accidentally stabbed Keith in the chest. Keith was able to walk out of the bedroom, into a hallway, where he collapsed and died. No other person witnessed the stabbing.
Keith's mother Brenda Tollett, as administratrix of Keith's estate, filed suit for wrongful death against Bokor. Tollett later amended her complaint to include negligence claims against Dostal, Lisa Bokor, Bray, Green, Wells, Pelz, Kazmierczak, and Shreve.[3] These claims alleged that the various defendants had violated R.C. 4301.69(B), when they permitted the seventeen-year old Bokor to drink beer on their premises. Tollett also joined as a defendant in the suit Amherst Farmers' Market. Tollett alleged that the Market was liable for the injury to Keith, pursuant to R.C. 4301.69, 4301.22(A), and 4399.18. The last two code provisions prohibit a permit holder from selling alcohol to an underage person, and provide that the permit holder may be held liable if a third party is injured by the underage purchaser. Tollett settled with Rachel Bokor and Lisa Bokor and the trial court granted summary judgment to defendants Green, the Market, Dostal, Kazmierczak, Shreve, Pelz, and Wells.
On appeal, Tollett asserts seven assignments of error, claiming that the trial court erred in granting summary judgment to each of the defendants.
 II. Summary Judgment
To prevail on a motion for summary judgment, the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis sic.) Dresher v. Burt (1996),75 Ohio St.3d 280, 292. To accomplish this, the movant must be able to point out to the trial court "evidentiary materials [that] show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Id.
at 293. If such evidence is produced, the non-moving party must proffer evidence that some issue of material fact remains for the trial court to resolve. Id.
An appellate court reviews an award of summary judgment de novo
and, like the trial court, must view the facts in the case in the light most favorable to the non-moving party. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. Any doubt must be resolved in favor of the non-moving party. Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12.
Where the non-moving party would have the burden of proving all of a number of elements in order to prevail at trial, the moving party in the summary judgment motion may point to evidence that the non-moving party cannot possibly prevail on an essential element of the claim. See, e.g., Stivison v. Goodyear Tire Rubber Co. (1997), 80 Ohio St.3d 498, 499. If the moving party meets this burden of proof, the burden then shifts to the non-moving party to show that there is a genuine issue of material fact as to that element. Dresher, 75 Ohio St.3d at 293. With this standard, we review the trial court's grant of summary judgment to each of the defendants.
 III. The Market
Brenda Tollett's claim against the Market alleged that the Market sold beer to Dostal, who was less than twenty-one years old and could not legally purchase beer. Tollett alleged that the Market sold beer to Dostal in violation of R.C. 4301.22(A), which prohibits the sale of beer to persons less than twenty-one years old, and in violation of R.C. 4301.69(A), which prohibits the sale or provision of beer to underage persons unless the underage person is accompanied by a parent, adult spouse, or legal guardian. Tollett also claims that, because the Market sold liquor to the underage Dostal, it is liable for injury to Keith, pursuant to R.C. 4399.18.
The evidence in the record that was pertinent to the Market's motion for summary judgment consisted of the deposition testimony of Bokor, Dostal, Phillips, and the Market's owner Myong Ho Han. Bokor and Dostal both testified that Phillips' boyfriend, Steven Bray, who was twenty-two or twenty-three, purchased the beer from the Market. Phillips, however, testified that Bray did not purchase the beer. Phillips said that she saw Dostal put the beer on the counter, and later walk out of the store with the beer. She did not actually see Dostal pay for the beer. Myong Ho Han testified that he was the only person who worked at the Market's cash register during the morning hours. He testified that he did not recall selling beer either to Dostal or to Bray on the morning of February 1, 1991. Han testified that he knew Bray well, because Bray had worked at the bar next door. Han admitted that on February 1, 1991, the Market was on probation for a prior sale of alcohol to an underage buyer, and that after the prior violation, Han was very careful to check identification.[4]
In its motion for summary judgment, the Market argued that even assuming that the Market sold the beer to Dostal, R.C.4399.18 provides the exclusive remedy in a negligence action against a permit holder when a third party is injured subsequent to a prohibited sale of alcohol. The Market also argued that if it sold beer to Dostal, it did not do so knowingly, as is required to impose liability pursuant to R.C. 4399.18, and that the Market's negligence in making such a sale was not the proximate cause of Keith's death. The Market argued that the intentional act by Bokor was an intervening act that broke the string of causality between the Market's negligence and the injury to Keith.
In response, Tollett pointed out that there was sufficient evidence that the Market knew or should have known that Dostal was underage. Tollett also argued that Bokor's assault absolves the Market of liability only if Bokor's intervening act was clearly disconnected from the Market's negligence. Tollett pointed to Bokor's testimony that she did not intend to harm Keith, but was negligent in handling the knife, which she was using to scare Keith. Bokor also testified that she was not thinking clearly because she was intoxicated.
Construing these facts in light most favorable to Tollett, we must assume that the Market sold the beer to Dostal, in violation of the statute. We must also accept as true Bokor's statement that she stabbed Keith negligently and not intentionally. Nonetheless, Tollett's claim against the Market must fail.
At common law, a shop that sold liquor could not be held liable for injuries which resulted from the acts of an intoxicated patron. See Klever v. Canton Sachsenheim, Inc. (1999), 86 Ohio St.3d 419,421. In 1986, the legislature enacted R.C. 4399.18, which now provides the sole means for imposing liability on a liquor permit holder when a third party suffers injuries caused by the permit holder's intoxicated patron. Id. The Ohio Supreme Court has stated that because the statute provides an exception to the common law immunity afforded to the permit holder, the statute must be construed narrowly. Id. The statute, as it existed on February 1, 1991, provided that
 A person has a cause of action against a permit holder or his employee for personal injury, death, or property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from a parking lot under the permit holder's control only when both of the following can be shown by a preponderance of the evidence:
 (A) The permit holder or his employee knowingly sold an intoxicating beverage to at least one of the following:
* * *
 (2) A person in violation of division (C) of section 4301.22 of the Revised Code; [or]
 (3) A person in violation of section 4301.69 of the Revised Code; [and]
 (B)The person's intoxication proximately caused the personal injury, death, or property damage.
R.C. 4399.18. R.C. 4301.22 prohibits, inter alia, sales to persons younger than twenty-one years of age. R.C. 4301.69
prohibits, inter alia, the provision of alcohol to a person younger than twenty-one, unless the person is accompanied by a parent, guardian, or spouse who is twenty-one or older.
When the injury occurs off the premises of the permit holder, the injury must be caused by the individual to whom the permit holder has sold the alcohol, in violation of the statute. The statute makes no provision for liability where, as here, the permit holder allegedly sold beer to an underage person, who provided the beer to another minor who became intoxicated and caused the injury. The provisions of the statute must be strictly construed. Klever, 86 Ohio St.3d at 421. Thus, viewing the facts in the light most favorable to Tollett, the Market cannot be held liable for the injury to Keith. There was no evidence that the Market sold the beer to Bokor, and the evidence is clear that it was Bokor who caused Keith's death. The Market was entitled to summary judgment as a matter of law. Tollett's second assignment of error is overruled.
 IV. The Social Host Defendants and R.C. 4301.69
Tollett's claim against each of the remaining defendants alleged that each defendant violated R.C. 4301.69(B), when the defendant allowed Bokor to consume alcohol while on the defendant's property at various times on February 1-2, 1991. Tollett claims that the statutory violation constituted negligence per se and such negligence was a proximate cause of the injury suffered by Keith when Bokor stabbed Keith in the early morning hours of February 2, 1991.
R.C. 4301.69(B), as it existed at the time of Keith's death, provided that:
 No person who is the owner or occupant of any public or private place shall knowingly allow any underage person to remain in or on the place while possessing or consuming beer or intoxicating liquor, unless the intoxicating liquor or beer is given to the person possessing or consuming it by that person's parent, spouse who is not an underage person, or legal guardian and the parent, spouse who is not an underage person, or legal guardian is present at the time of the person's possession or consumption of the beer or intoxicating liquor.
 For purposes of the statute as it existed then, a person younger than twenty-one years of age was an underage person. R.C. 4301.69(H)(5). Violation of the statute constitutes negligence per se. See Gressman v. McClain (1988), 40 Ohio St.3d 359, 362, citing Taylor v. Webster (1967), 12 Ohio St.2d 53, 56.
Each of the defendants argued that Bokor's stabbing of Keith was a superceding act or intervening cause which broke the string of causation between the alleged negligence of the defendant and the injuries to Keith. As a preliminary matter, this court concludes that, under the facts in evidence before the trial court, a grant of summary judgment in favor of any of these defendants on the basis of lack of proximate cause is unwarranted.
Because no one witnessed the actual stabbing, the only evidence in the record that dealt with the stabbing was Bokor's deposition testimony. Bokor testified that she did not intentionally stab Keith, but negligently swung the knife at him, hoping to scare him. Bokor also testified that she was not thinking as clearly as she would have if she had been sober. There was no evidence before the trial court to refute Bokor's statements. Thus, in considering a motion for summary judgment, the trial court and this court in review must view the facts in the light most favorable to Tollett, namely that Bokor negligently handled the knife, which she was using to frighten Keith, and she accidentally stabbed him. We must also accept Bokor's testimony that she was not thinking clearly because of her intoxication.
While Bokor's activity with the knife may have been an intervening act which served to break the causal connection between the negligence of the various defendants and the injuries to Keith, given the facts cited above, the trial court could not properly grant summary judgment on that basis. The Ohio Supreme Court has held that
 1. Whether an intervening act breaks the causal connection between negligence and injury, thus relieving one of liability for his negligence, depends upon whether that intervening cause was a conscious and responsible agency which could or should have eliminated the hazard, and whether the intervening cause was reasonably foreseeable by the one who was guilty of the negligence.
 2. Where the facts are such that reasonable minds could differ as to whether the intervening cause was a conscious and responsible agency which could or should have eliminated the hazard, whether the intervening act or cause constituted a concurrent or superseding cause, and whether the intervening cause was reasonably foreseeable by the original party guilty of negligence, present questions for submission to a jury which generally may not be resolved by summary judgment.
(Citations omitted.) Cascone v. Herb Kay Co. (1983), 6 Ohio St.3d 155, paragraphs one and two of the syllabus. Given Bokor's testimony that her act was one of negligence and was not intentional, the question of whether Bokor's act was a legally intervening cause which broke the chain of proximate cause between these defendant's alleged negligence and Keith's injuries, was not a question properly disposed of in summary judgment. See id.
Thus, each of the remaining defendants could have prevailed in his or her motion for summary judgment only if the facts in evidence as to that defendant were such that there was no genuine issue of material fact regarding the alleged violation of R.C.4301.69, and viewing the facts in the light most favorable to Tollett, reasonable minds could conclude only that the defendant was entitled to judgment as a matter of law. If a defendant violated the statute, such a violation would constitute negligence per se. See Gressman, 40 Ohio St.3d 362. If there was a genuine issue of material fact as to the defendant's violation of the statute, then the defendant was not entitled to summary judgment. We now review the facts in evidence as to each defendant to determine whether the trial court properly granted summary judgment to each defendant.
DEFENDANT DEBBIE GREEN (First Assignment of Error).
The evidence in the record that was pertinent to Green's motion for summary judgment consisted of Green's affidavit, attached to her motion for summary judgment, and the deposition testimony of Bokor, Dostal, and Phillips. Green's motion for summary judgment asserted that: (1) she was not acting in locoparentis toward her nephew Steven Bray; (2) Bray was at least twenty one years old; (3) plaintiff Tollett could not prove that Green knew that Bokor was drinking on her premises; and (4) any negligence by Green was not the proximate cause of Keith's death.
Green's third argument is based on her affidavit statement that although she may have been at home on the morning of February 1, 1991, she was sleeping and did not know that anyone was present, let alone that minors were drinking. Green's affidavit stated, "I do know that no minor had alcoholic beverages while I was present and awake." Green's motion for summary judgment stated, "Plaintiff cannot prove or offer proof of the essential element [of Green's knowledge] for her cause of action against [Green]." However, as noted above, in order to withstand summary judgment, Tollett was required merely to point to evidence in the record that demonstrated that there was a genuine issue of material fact as to this element.
In response to Green's motion for summary judgment, Tollett pointed to the deposition testimony of Bokor, who said that a woman was in the Green/Bray home on the morning of February 1, 1991, and that Bokor believed that the woman was Bray's aunt. Bokor stated that the woman was walking around the house, and that the door of Bray's bedroom, where Bokor and the others were drinking, remained open. Bokor also testified that Bray and Phillips were smoking marijuana in the bedroom.
In its grant of summary judgment in favor of Green, the trial court stated, "Plaintiff has failed to come forth with any evidence to refute Green's affidavit testimony that Defendant Green did not know that minors were drinking alcohol in her residence. Bokor's testimony does not refute this." In dealing with the motion for summary judgment, the trial court was required to view the facts in the light most favorable to Tollett, the non-moving party. Grafton, 77 Ohio St.3d at 105. The trial court was required to resolve any doubts in favor of Tollett. Viock,13 Ohio App.3d at 12. Viewing the facts in the light most favorable to Tollett, Bokor's testimony is sufficient to demonstrate that there was a genuine issue of material fact as to whether Green knew about the underage drinking.
The trial court erred in granting Green summary judgment, when there was a genuine issue of material fact as to Green's knowledge about the underage drinking. Tollett's first assignment of error is well-taken.
B. DEFENDANT DARIN DOSTAL (Third Assignment of Error).
 The evidence in the record that pertained to Dostal's motion for summary judgment consisted of the depositions of Bokor, Dostal, and Phillips. Tollett's negligence claim against Dostal asserted that Dostal (1) violated R.C. 4301.69(B), when he permitted Bokor to drink beer while in Dostal's car, and (2) violated R.C. 4301.69(A) when he purchased beer for, and provided beer to, Bokor.
Dostal disputed the claim that he purchased the beer at the market for Bokor. Dostal claimed that Bray purchased the beer for Dostal and Bokor. However, Phillips testified that it was Dostal who purchased the beer. Dostal admittedly drove Bokor from school to the Bray/Green residence, to the Market, back to Bray's house, and then to the residences of Wells, Lisa Bokor, Kazmierczak, Shreve, and finally back to Wells' house. Dostal's deposition testimony established that during at least some of these trips, Bokor was consuming beer in Dostal's car while Dostal was present. Bokor testified that after she passed out at Lisa Bokor's house, she and Dostal drove to Kazmierczak's house, and that she was drinking in Dostal's car en route. Dostal acknowledged that even though he knew that Bokor had too much to drink, he still allowed her to drink in his car. Dostal stated "I don't feel I'm someone that can tell her [Bokor] what to do."
In his motion for summary judgment, Dostal contested the allegation that he purchased the beer from the Market, but he admitted to permitting Bokor to consume beer while in his car. However, Dostal asserted that if there any negligence on his part, it was not the proximate cause of Keith's death.
In response to Dostal's summary judgment motion, Tollett asserted, inter alia, that there were genuine issues of material fact as to whether Dostal violated R.C. 4301.69(A) by purchasing beer for Bokor, and that Dostal admitted to allowing Bokor to drink in his car, a violation of R.C. 4301.69(B).
In granting summary judgment to Dostal, the trial court found that "as a matter of law, [Keith's] death as a result of a stabbing was not a natural and probable consequence of Dostal's statutory violations." The trial court further found that "[Keith's] jealous rage and [Keith's] argument with Bokor which resulted in the stabbing was not a reasonable, foreseeable consequence of Darin Dostal's beer drinking with Bokor as a matter of law."
Viewing the facts in the light most favorable to Tollett, Dostal purchased beer for and provided beer to Bokor. Dostal also permitted Bokor to drink while she was riding in his car, even after Bokor was so drunk that she blacked out. Indeed, Dostal does not contest that he allowed Bokor to drink beer in his car, in violation of R.C. 4301.69(B). Given our determination that the trial court could not grant summary judgment on the issue of proximate cause, we find that the trial court erred in granting summary judgment in favor of Dostal. Tollett's third assignment of error is well-taken.
DEFENDANT TAMMY KAZMIERCZAK (Fourth Assignment of Error)
 The facts in evidence before the trial court regarding Kazmierczak established that Bokor and Dostal came to Kazmierczak's home at approximately 8 p.m. on February 1, 1991 and stayed there until approximately 9:30 p.m. Bokor testified that she consumed beer at Kazmierczak's house and in her presence. Dostal also testified that he and Bokor drank beer at Kazmierczak's house. Kazmierczak testified that Bokor drank some eight beers while in Kazmierczak's presence on February 1, at least two of them at Kazmierczak's house. Kazmierczak admitted that Bokor was intoxicated when she arrived at Kazmierczak's house. Kazmierczak testified that she knew that Bokor was "a wild person," although because Kazmierczak was usually drinking when she was with Bokor, she couldn't say whether Bokor behaved differently when she was drinking as opposed to when she was sober.
In her motion for summary judgment, Kazmierczak asserted she had no duty of care to Keith because the harm to him was not foreseeable. In response to the motion for summary judgment, Tollett pointed out the facts outlined above regarding Kazmierczak's violation of the statute. Tollett also argued that the statute imposed a duty of care, and asserted that there was a genuine issue as to proximate cause.
The trial court granted summary judgment on the basis that the stabbing was not a natural and probable consequence of the statutory violation, and the one or two beers which Bokor consumed at Kazmierczak's house five to six hours before Keith's death was "too remote in time" as a matter of law.
Having concluded that the trial court could not appropriately grant summary judgment to this defendant on the issue of proximate cause, we must conclude that summary judgment was erroneously awarded. There was uncontroverted evidence that Kazmierczak knowingly allowed the underage Bokor to consume alcohol at her home, in violation of R.C. 4301.69(B), which constituted negligence per se. Tollett's fourth assignment of error is well-taken.
DEFENDANT HEIDI SHREVE (Fifth Assignment of Error).
Tollett alleged that defendant Shreve also violated R.C.4301.69(B) when she knowingly permitted Bokor to drink beer at Shreve's home on February 1, 1991.
In her motion for summary judgment, Shreve argued that: the evidence established that Bokor was only at her house for approximately fifteen minutes; the beer which Bokor consumed at Shreve's house was beer that Bokor brought into the house with her; and if Bokor had not consumed beer at Shreve's house, she would have consumed beer elsewhere. In response, Tollett pointed out that: violation of R.C. 4301.69 constitutes negligence per se; Shreve admitted that she assumed Bokor was under age and that Bokor drank beer at her house; and several persons testified that Bokor and her companions stayed there for approximately one hour.
The trial court granted summary judgment to Shreve, finding that even if Shreve did violate the statute, such per se negligence was not a proximate cause of Keith's death, because it was too remote in time. Having concluded that the trial court erred in granting summary judgment on this basis, we likewise conclude that the trial court erred when it granted summary judgment in favor of Shreve. The evidence established that Shreve, who knew that Bokor was probably under age, allowed Bokor to drink beer in her home. Tollett's fifth assignment of error is well-taken.
DEFENDANTS LEANNE PELZ AND DARREN WELLS (Assignments of Error Six and Seven).
 On February 1, 1991, Bokor twice visited the home of Darren Wells, where he lived with his girlfriend, now wife, Leanne Pelz. On the first occasion Bokor and Dostal visited the house from approximately 11 a.m. to 1 p.m. Bokor testified that both Wells and Pelz were home at the time, that she drank beer there in the presence of both occupants, and that neither person asked her to stop drinking. Dostal testified that he did not remember Wells being present on that occasion, but testified that both he and Bokor drank beer in Pelz' presence. Pelz testified that Wells was not home at the time of this first visit, and that she does not believe that anyone drank beer at the time of the first visit, which lasted from one to two hours.
Bokor's second visit to Wells' home began at 11 p.m. Bokor testified that she was drinking beer there shortly after her arrival, before Dostal left for the night. Bokor testified that Dostal and several other persons were drinking as well, and that someone was smoking marijuana. Dostal could not remember if Bokor drank any beer at Wells' home on this occasion. Dostal testified that he only stayed there about ten minutes, and then left to drive Kazmierczak and her friends home. Kazmierczak testified that she, Dostal, and her friends stayed at Wells' house for about an hour. Kazmierczak testified that she saw Bokor drink beer at the Wells residence.
Wells testified that he had known Bokor all his life. He testified that he could not recall if Bokor drank at his house on any occasion prior to February 1, 1991, although Bokor did spend the night there on several occasions. He also testified that he did not know if Bokor consumed beer at his house on February 1, but that Bokor and her friends did bring beer into his house that night. Pelz testified that she did not know if Bokor had any beer to drink that night at the Wells residence, but that Bokor did have a cooler of beer at her feet. Pelz later testified that Bokor consumed all the beer before she arrived at the Wells residence that night. Pelz also testified that: Bokor had consumed beer in her presence on prior occasions; Bokor was easily angered, even violent, when drunk; on at least two occasions, while drinking, Bokor had been violent and assaulted Keith; and Bokor had told Pelz on prior occasions that she had blacked out from alcohol consumption. In fact, Pelz testified that on the afternoon of February 1, Pelz spoke to Lisa Bokor, Bokor's stepmother, who told Pelz that Bokor had passed out in her kitchen that afternoon. Nonetheless, Bokor had a cooler of beer at her feet while partying in the Wells residence, where minors were drinking alcohol and smoking marijuana. Both Pelz and Wells testified that when the beer ran low, Pelz, Wells, and another friend went to a convenience store to purchase more beer.
In their motion for summary judgment, Pelz and Wells advanced the argument that any negligence on their part was not the proximate cause of Keith's death. In response, Tollett pointed to the facts in evidence, outlined above, and argued that the issue of proximate cause should go to the jury.
Once again, the trial court granted summary judgment to Pelz and Wells, on the basis that any negligence on their part was not the proximate cause of injury to Keith. The trial court could not appropriately grant summary judgment on this basis. Because the evidence before the trial court established, at minimum, that there were genuine issues of material fact as to whether Bokor consumed beer at the residence of, and with the permission of, Wells and Pelz, in violation of R.C. 4301.69(B), the trial court erroneously granted summary judgment to these two defendants. Tollett's sixth and seventh assignments of error are well-taken.
 V.
We have found that the Market was entitled to summary judgment, because the facts in the instant case fall outside the sole statutory provision that allows a permit holder to be held liable for the injuries suffered by a third person subsequent to the unlawful sale of alcohol. Thus, we affirm the trial court's grant of summary judgment in favor of the Market.
However, as to the social hosts, defendants Green, Dostal, Kazmierczak, Shreve, Pelz, and Wells, the trial court erred in granting summary judgment in favor of the defendants. For each defendant, the evidence before the trial court was sufficient, at minimum, to demonstrate that there are genuine issues of material fact as to whether each defendant violated R.C. 4301.69, which violation would constitute negligence per se. We have determined that, as to the facts herein, the issue of proximate cause, which the trial court resolved in favor of these defendants, was not susceptible to resolution on summary judgment. We reverse the trial court's decision as to its grant of summary judgment in favor of defendants Green, Dostal, Kazmierczak, Shreve, Pelz, and Wells. As to these defendants, the cause is remanded to the trial court for further action consistent with this decision.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to all parties equally.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
CARR, J., BATCHELDER, J., CONCUR.
[1] The trial court did not make a specific determination that there was no just cause for delay when it granted summary judgment in favor of the various defendants. Consequently, none of the summary judgment decisions of the trial court was final until the resolution of all the claims. Civ.R. 54(B).
[2] Leanne Pelz and Darren Wells married in December 1991.
[3] Steven Bray was never served with a copy of the complaint, because he could not be located. Therefore, he was never successfully joined as a defendant in this case.
[4] Han testified that the prior illegal sale was made by an employee who continued to work at the Market after Han purchased the Market from its previous owner. After the infraction, Han discharged the employee, and only Han and his wife worked at the Market thereafter.