OPINION *Page 2 
{¶ 1} Plaintiff-appellant Jack E. Davis appeals the April 30, 2007, decision of the Richland County Court of Common Pleas granting summary judgment in favor of Defendants-appellees Gary Johnson and Bill Par.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Since May, 1998, Appellant, Jack E. Davis, has been under contract with the City of Mansfield to operate the Robin's Nest Bait Shop at the City's Clear Fork Reservoir. Pursuant to said contract, Appellant was to provide the services of fishing tackle and accessories, bait, fishing and hunting licenses, camping supplies, sandwiches, soda, juices, milk, snacks, firewood and other sundries to users of the reservoir and the general public, between April 1st and October 31st. Appellant's shop was located in a building owned and furnished by the City. The City provided all utilities to the premises except telephone service. Per the requirements of the contract, Appellant was obligated to pay the City five percent (5%) of the bait shop's net profits (all money received less operating costs).
 {¶ 3} Appellee Gary Johnson is employed by the City of Mansfield as the Operations Supervisor of Clear Fork Reservoir and has served in that capacity since 1987. As the Operations Supervisor, his duties, under the general supervision of the Public Utilities Director, are to plan and supervise the operation, maintenance and upkeep of the reservoir and its attendant land.
 {¶ 4} Appellee Bill Parr is employed at said reservoir by the City as a Supervisor I. He has held this position since 1989. As a Supervisor I, his duties, under the general supervision of the Operations Supervisor, are to supervise workers and/or work crews *Page 3 
and personnel and oversee and perform construction, maintenance and repair functions at the reservoir.
 {¶ 5} Appellant alleges that Appellees, individually and in concert with each other and others, harassed and humiliated him and that Appellees attempted to force him to cease his lawful business.
 {¶ 6} On September 13, 2005, Appellant, Jack E. Davis, brought suit against Appellees Gary Johnson and Bill Parr. In said Complaint, Appellant named both Johnson and Parr, individually and in their capacity as the Operations Supervisor and Supervisor I, respectively, of the Clear Fork Reservoir, owned by the City of Mansfield. Said Complaint sought injunctive relief and monetary damages.
 {¶ 7} Said Complaint set forth the following causes of action:
 {¶ 8} "FIRST CLAIM
 {¶ 9} " * * *
 {¶ 10} "4. Since in [sic] or about 1998 and up to the present time and into the foreseeable future, the defendants have engaged in a campaign to harass and humiliate plaintiff and to attempt to force him to cease his lawful business, all in violation of the laws of the United States and/or the State of Ohio, including but not limited to the following:
 {¶ 11} "A. Repeatedly turning off the water to plaintiff's business without cause, justification or excuse, despite the fact that defendants were aware plaintiff serves coffee and other food and that water was necessary for the survival of the minnows maintained there for bait; *Page 4 
 {¶ 12} "B. Chlorinating and/or otherwise tampering with the water at plaintiff's business without plaintiff's knowledge or consent, such to cause substantial amounts of fish to die;
 {¶ 13} "C. Refusing to allow plaintiff Jack Davis to use the facilities where his store is located despite the fact that use of the facilities is permitted for other residents and/or business operators in that area;
 {¶ 14} "D. Refusing to give plaintiff a key to the restroom utilized by his business despite the fact that other business operators are given keys;
 {¶ 15} "E. Refusing to permit plaintiff to utilize portable signs advertising his products/store despite the fact that other business operators are permitted to utilize portable signs;
 {¶ 16} "F. Refusing to permit plaintiff to collect his own mail at his business;
 {¶ 17} "G. Instructing plaintiff that he is not permitted to sell certain items despite the fact that other businesses at Clear Fork were permitted to sell those items;
 {¶ 18} "H. Denying plaintiff permission to park his camper on the lot next to his business;
 {¶ 19} "I. Disposing of equipment which belonged to plaintiff;
 {¶ 20} "J. Making disparaging remarks about plaintiff;
 {¶ 21} "K. Refusing to permit plaintiff to have guests in his camper despite the fact that others are permitted to do so;
 {¶ 22} "L. Entering and searching plaintiff's business without plaintiff's knowledge and consent." *Page 5 
 {¶ 23} "5. Defendants have each utilized their position with the City of Mansfield, Ohio to take the action complained of herein and have conspired with themselves and others to harass and humiliate plaintiff for reasons unknown to plaintiff and/or because of plaintiff's handicap and/or in order to force plaintiff to cease his lawful business.
 {¶ 24} "6. The actions of defendants were without cause, justification or excuse.
 {¶ 25} "7. The wrongful acts and/or conduct by defendants were performed knowingly, wantonly, willfully, and/or intentionally and with reckless disregard for the rights of plaintiff.
 {¶ 26} "8. As a direct and proximate result of the wrongful acts and conduct of defendants, plaintiff has suffered severe and intense emotional distress, mental anguish, humiliation, embarrassment and great loss of business and reputation and standing in the community; further, plaintiff has suffered loss of income and have and will continue to incur legal fees and expenses to seek vindication of his legal rights.
 {¶ 27} "SECOND CLAIM
 {¶ 28} "* * *
 {¶ 29} "10. The defendants, acting in concert with themselves and unnamed individuals, constitute conspiracy of defendants, willfully acting or omitting to act in concert, to deprive plaintiff of his rights and of his legal business.
 {¶ 30} "11. As a direct and proximate result of the wrongful acts and conduct and/or failures to act on the parts of defendants plaintiff has suffered those damages set forth in the foregoing paragraph eight (8). *Page 6 
 {¶ 31} "THIRD CLAIM
 {¶ 32} "* * *
 {¶ 33} "13. The extreme and outrageous acts and conduct of defendants as set forth did constitute interference with the contractual relations of plaintiff, all without cause, justification or excuse.
 {¶ 34} "14. As a direct and proximate result of wrongful acts and conduct of defendants plaintiff has suffered those damages set forth in the foregoing paragraph eight (8).
 {¶ 35} "FOURTH CLAIM
 {¶ 36} "* * *
 {¶ 37} "16. The actions of defendants constitute slander and defamation of plaintiff.
 {¶ 38} "17. As a direct and proximate result of the wrongful acts and conduct of defendants plaintiff has suffered those damages set forth in the foregoing paragraph eight (8)."
 {¶ 39} At the conclusion of discovery, which included an exchange of interrogatories and request for admissions in addition to depositions of both Appellant and his wife, Appellees filed a motion for summary judgment as to the following distinguishable claims: intentional infliction of serious emotional distress, tortious interference with a contractual relationship, civil conspiracy and defamation.
 {¶ 40} In Appellant's response to the motion for summary judgment, Appellant raised claims of discrimination and breach of contract as alleged causes of action.
 {¶ 41} The trial court granted summary judgment as to those distinguishable *Page 7 
claims raised in Appellant's complaint and addressed through the discovery process. The trial court also addressed Appellant's alleged discrimination claim.
 {¶ 42} It is from this decision Appellant now appeals, raising the following assignments of error:
 ASSIGNMENTS OF ERROR {¶ 43} "I. THE TRIAL COURT ERRED IN DECIDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON GROUNDS NOT RAISED OR ADDRESSED IN DEFENDANTS' MOTION.
 {¶ 44} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AND DISMISSING ALL OF PLAINTIFF-APPELLANT'S CLAIMS SUCH THAT THE JUDGMENT MUST BE REVERSED."
 {¶ 45} In both of Appellant's assignments of error, he argues that the trial court erred in granting summary judgment in favor of Appellees.
 "Summary Judgment Standard" {¶ 46} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. Civ.R. 56(C) provides, in pertinent part:
 {¶ 47} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be *Page 8 
rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 48} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall,77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280,1996-Ohio-107.
 {¶ 49} It is based upon this standard that we review appellant's assignments of error.
 I. {¶ 50} In his first assignment of error Appellant asserts that the trial court erred in granting summary judgment on his claims of discrimination and breach of contract arguing that such claims were not raised in Appellees' motion for summary judgment. We disagree. *Page 9 
 {¶ 51} Upon review of Appellant's Complaint and the record before this Court, we find that Appellant did not raise a cognizable cause of action for either discrimination or breach of contract in his Complaint. A close review of said Complaint reveals no mention or allegation of discrimination whatsoever. In fact, reference to Appellant's handicap, i.e. blindness, and the word handicap appear only once, that being found in paragraphs 1 and 5 under the First Claim in said Complaint:
 {¶ 52} "1. The plaintiff, Jack E. Davis, is legally blind . . .
 {¶ 53} "5. Defendants have each utilized their position with the City of Mansfield, Ohio to take the action complained of herein and have conspired with themselves and others to harass and humiliate plaintiff for reasons unknown to plaintiff and/or because of plaintiff's handicap and/or in order to force plaintiff to cease his lawful business."
 {¶ 54} In order to survive a summary judgment on a statutory claim for disability-discrimination pursuant to R.C. § 4112.02 (A), the Appellant must set forth a prima facia case of disability discrimination by showing (1) that Appellant was disabled, (2) that his employer took adverse employment action motivated at least in part by his disability, and (3) that Appellant, even with his disability, can safely and substantially perform the essential functions of his job with or without reasonable accommodation. See Columbus Civ. Sen/. Comm. v. McGlone
(1998), 82 Ohio St.3d 569, 697 N.E.2d 204.
 {¶ 55} In the case sub judice, the trial court found that Appellant did not set forth any facts in her complaint or brief consistent with his allegation of disability discrimination, other than a statement that he is blind. The trial court found that *Page 10 
Appellant had failed to establish that the treatment alleged in said complaint was based on his disability. The trial court further found that Appellant did not have an employer-employee relationship in that Appellant was under contract with the City as an independent contractor and therefore lacked standing to sue for discrimination based on handicap.
 {¶ 56} We have reviewed the record, and we agree that Appellant did not have standing to raise to handicap discrimination claim.
 {¶ 57} We further find that nowhere in Appellant's complaint does he set forth a cause of action for breach of contract. We therefore find that the trial court did not err in granting summary judgment as to all causes of action contained in Appellant's complaint.
 {¶ 58} Based on the foregoing, Appellant's first assignment of error is overruled.
 II. {¶ 59} In his second assignment of error Appellant argues that that the trial court committed error in granting Appellees' motion for summary judgment without any discussion of the evidence and argument submitted by Appellee. We disagree.
 {¶ 60} More specifically, Appellant argues that the trial court failed to consider the evidence of Appellant.
 {¶ 61} Initially, we must note that the lack of reference to Appellant's arguments as made in his Memorandum Contra to Appellees' Motion for Summary Judgment cannot be interpreted to mean the trial court did not give due consideration to same. We shall therefore proceed to review the award of summary judgment de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. We shall apply the same standard *Page 11 
as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948.
 {¶ 62} As to Appellant's claim for intentional infliction of emotional distress, Appellant had the burden to demonstrate the following:
 {¶ 63} (1) the defendant either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional harm to the plaintiff; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental distress suffered by the plaintiff was serious.
 {¶ 64} "* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
 {¶ 65} "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and *Page 12 
Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936).* * * "
 {¶ 66} In claiming "extreme and outrageous" conduct, Appellant must establish the conduct went beyond all possible bounds of decency and was utterly intolerable in a civilized community. Such was never presented in this case. Appellant merely relied on the alleged acts of Appellees without presenting any substantiated facts or evidence. Nothing has been offered with regard to outrageous conduct of Appellee warranting consideration of this claimed cause of action.
 {¶ 67} Furthermore, Appellant stated in discovery that he has not incurred any health care expenses as a result of any mental anguish or physical or psychological injury, therein failing to establish that any such injury occurred.
 {¶ 68} We therefore find that the trial court did not err in granting summary judgment as to this cause.
 {¶ 69} In order to establish a claim for tortious interference with a business relationship, a party must show the following:
 {¶ 70} "(1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages." Brookside Ambulance,Inc. d.b.a. Rumpf Ambulance Service v. Walker Ambulance Service (1996),112 Ohio App.3d 150, 155-156, 678 N.E.2d 248, citing Kenty v.Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415, 650 N.E.2d 863, and A B-Abell Elevator Co. v. *Page 13 Columbus/Cent. Ohio Bldg. Constr. Trades Council (1995),73 Ohio St.3d 1, 651 N.E.2d 1283.
 {¶ 71} In its judgment entry of April 30, 2007, the trial court found that Appellant had failed to show that any breach had in fact occurred. Upon review, we too find a lack of evidence of a breach of contract as required to successfully establish a claim for intentional interference with a contractual business relationship. The current contract in this case was terminated at the end of 2006 in accordance with the provisions of said contract, which provided:
 {¶ 72} "7. This Agreement shall commence on January 1, 2004 and shall continue for a period of one (1) year thereafter. It shall be renewed for three (3) successive one (1) year terms unless either gives the other sixty (60) days prior notice of a desire not to renew.
 {¶ 73} "8. This Agreement may be terminated by either party by giving sixty (60) days written notice of its intent to terminate."
 {¶ 74} We therefore find the trial court did not err in granting summary judgment to Appellees on the tortious interference with a business relationship claim.
 {¶ 75} Appellant's claim for civil conspiracy to inflict serious emotional distress and/or to interfere with a contractual relationship also must fail based on Appellant's failure to establish either tort.
 {¶ 76} To survive summary judgment, Appellant was required to establish five elements necessary to a claim for defamation: (1) a false and defamatory statement of fact; (2) about the plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) which was either defamatory *Page 14 
per se or caused special harm to the plaintiff, citing Akron-CantonWaste Oil, Inc. v. Safety-Kleen Oil Service, Inc. (1992),81 Ohio App.3d 591.
 {¶ 77} Appellant stated in his deposition that he heard who he thought was Appellee Johnson, make the following statement during a bass tournament as to when the bait shop could be expected to open:
 {¶ 78} ". . . I don't know where the assholes are." (J. Davis depo. at 41-24).
 {¶ 79} Appellant further stated, "He used the word A-hole, the two letter word when they're going to get here." Id.
 {¶ 80} Appellant went on to explain that he was slandered in the following manner:
 {¶ 81} "Just the way they portrayed themselves as, you know, it's their business whether they support me or not, but doing all of the things they've done to me and all of this reverts back to the bottom line whether it can stay in business and allowing Mr. Miller to put boats all the way around my bait shop and parking their boats and can't see my sign . . ." (Id. at 61).
 {¶ 82} Upon review, we find no facts to support a claim of slander or defamation and therefore find that the trial court did not err in granting summary judgment as to this cause of action. *Page 15 
 {¶ 83} Based on the foregoing, Appellant's second assignment of error is overruled.
 {¶ 84} For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
 Wise, J. Gwin, P. J., and Farmer, J., concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed. Costs assessed to Appellant. *Page 1