[Cite as *Citizens Bank Natl. Assn. v. Ranch Rd. Superior Properties, L.L.C.*, 2016-Ohio-7590.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

CITIZENS BANK, NATIONAL
ASSOCIATION

     Appellee

     v.

RANCH ROAD SUPERIOR
PROPERTIES, LLC, et al.

     Defendants

     and

SHAINE WARD

     Appellant

C.A. No.     28023


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2015-03-1541

DECISION AND JOURNAL ENTRY

Dated: November 2, 2016

---

MOORE, Presiding Judge.

{¶1}    Defendant-Appellant Shaine E. Ward appeals from the judgment of the Summit County Court of Common Pleas. We affirm.

I.

{¶2}    On October 4, 2004, Defendant Ranch Road Superior Properties, LLC ("Ranch Road") executed a loan agreement, evidenced by a term note, under which Ranch Road borrowed $267,435 from Charter One Bank, N.A. Payments were to begin November 4, 2004 at a rate of $1,721.40 per month. Interest was set to accrue at 5.99%. Mr. Ward and Defendant Melissa M. Schmitt agreed to personally guarantee the obligation and both signed unlimited

guaranties to that effect. After Ms. Schmitt failed to supply certain financial information, beginning in February 2013 and extending through part of May 2014, a 10.99% default interest rate was applied to the loan. In May 2014, the interest rate returned to 5.99%. By its terms, the loan matured and the balance became due on October 4, 2014. The balance was not repaid, causing the loan to be in default.

{¶3} In March 2015, Plaintiff-Appellee Citizens Bank, National Association, fka Charter One, a division of RBS Citizens N.A. ("Citizens Bank") filed a complaint for money damages. Citizens Bank asserted three claims for breach of contract, one each against Ranch Road, Mr. Ward, and Ms. Schmitt, and one claim for unjust enrichment against Ranch Road. Citizens Bank alleged that, as of February 18, 2015, $245,241.16 was owed, comprised of $215,322.91 in principal, $5,335.81 in interest, $21,963.39 in late fees, and $2,618.25 in legal expenses.

{¶4} Ranch Road and Mr. Ward filed a joint answer and cross-claim against Ms. Schmitt. Ms. Schmitt filed an answer to the complaint, and later in the litigation received leave to file an amended answer and a cross-claim against Mr. Ward.

{¶5} In August 2015, Citizens Bank filed a motion for summary judgment. In support of its motion, Citizens Bank offered the affidavit of John Poirier, a "workout officer" for Citizens Bank, a copy of the payment history, a copy of the complaint, which included copies of the note, loan agreement, and guaranties, and copies of the parties' answers and attachments to the answers.

{¶6} Ms. Schmitt did not respond to the motion. Ranch Road and Mr. Ward together filed a brief in opposition. They argued that Citizens Bank had not demonstrated that it was the proper party to enforce the note or guaranty and that there was a dispute of fact with respect to

the amount due and owing. In support of their argument, Ranch Road and Mr. Ward submitted the affidavit of Mr. Ward and an email from "Citizens Bank of Pennsylvania" discussing billing issues. Additionally, Ranch Road and Mr. Ward requested that the trial court postpone ruling on the motion for summary judgment until after Ranch Road and Mr. Ward had received all discovery materials and sought to supplement their opposition if additional defenses became available. Citizens Bank filed a brief in reply to which it attached a second affidavit of Mr. Poirier, along with documents related to the history of Charter One Bank, N.A., and a complete payment history.

{¶7} Over a month later, the trial court issued a judgment entry granting summary judgment to Citizens Bank. The trial court viewed Mr. Ward and Ranch Road's request to postpone ruling on the motion as a request pursuant to Civ.R. 56(F) and denied it. The trial court concluded that Ranch Road had breached the terms of the note and was in default and that Mr. Ward and Ms. Schmitt were liable to Citizens Bank for the default based upon their personal guaranties. The trial court awarded Citizens Bank $254,079.17 as of June 30, 2015, with an interest rate of $35.34 per day, plus costs of collection. The trial court included Civ.R. 54(B) language in its judgment entry.

{¶8} Mr. Ward alone has appealed, raising three assignments of error, which we have rearranged to facilitate our review. This Court has no jurisdiction to review the judgment with respect to Ranch Road or Ms. Schmitt.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT HAS FURTHER ERRED IN FAILING TO ADDRESS THE CROSS-CLAIMS THAT HAD BEEN FILED IN THIS MATTER PRIOR TO RENDERING ITS ORDER ON THE MOTION FOR SUMMARY

JUDGMENT AND OTHER FURTHER FACTUAL ERRORS THAT THE TRIAL COURT HAS MADE REGARDING THE MATTER BEFORE IT.

{¶9}  In his second assignment of error, Mr. Ward argues that the trial court erred in failing to address the cross-claims and committed other "factual errors[.]"

{¶10}  To the extent Mr. Ward has challenged the trial court's failure to rule on the cross-claims, we note that those claims are still pending in the trial court.  The trial court included in its ruling on Citizens Bank's motion for summary judgment a certification pursuant to Civ.R. 54(B); and, thus, only the trial court's ruling on Citizens Bank's motion for summary judgment is before us.  *See* Civ.R. 54(B).  Mr. Ward has cited no law that would support his assertion that the trial court committed error in failing to address the cross-claims.  *See* App.R. 16(A)(7).

{¶11}  Mr. Ward's remaining arguments in this assignment of error relate to issues not specifically outlined in his assignment of error.  This Court has held that "[a]n appellant's assignment of error provides a roadmap for our review and, as such, directs our analysis of the trial court's judgment."  (Internal quotations and citation omitted.)  *State v. Thomas*, 9th Dist. Summit No. 27266, 2015-Ohio-2935, ¶ 40.  Moreover, Mr. Ward has failed to cite any law in support of his additional arguments.  *See* App.R. 16(A)(7).  Given the foregoing circumstances, we decline to address the merits of his remaining arguments.

{¶12}  Mr. Ward's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

[CITIZENS BANK] HAD NOT DEMONSTRATED IT IS THE PROPER PARTY IN INTEREST TO ENFORCE THIS NOTE OR GUARANTY.

**{¶13}** In his third assignment of error, Mr. Ward argues that Citizens Bank was not entitled to summary judgment because it failed to demonstrate it was the proper party to enforce the note or guaranty.

**{¶14}** We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

**{¶15}** Pursuant to Civ.R. 56(C), summary judgment is proper only if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id*. at 293. If the moving party fulfills this burden, then the burden shifts to the nonmoving party to prove that a genuine issue of material fact exists. *Id*.

**{¶16}** Mr. Ward argued below and on appeal that Citizens Bank failed to demonstrate that it was the holder of the note only because Ranch Road did not enter into an agreement with Citizens Bank; but rather it entered into an agreement with Charter One Bank, N.A. Thus, Mr. Ward argues that Citizens Bank did not have standing.

{¶17} "Standing to sue requires that a party have a sufficient personal stake in the outcome of the case." *CitiMortgage, Inc. v. Uhl,* 9th Dist. Wayne No. 13CA0014, 2014-Ohio-2868, ¶ 11. "[A] party may gain interest in a note or mortgage through a chain of mergers." *Bank of Am., N.A. v. McCormick,* 9th Dist. Summit No. 26888, 2014-Ohio-1393, ¶ 8.

{¶18} Our sister districts have noted that:

> [W]hen two banks merge, the absorbed bank becomes a part of the resulting bank, and the merged bank has the ability to enforce agreements as if the resulting bank had stepped in the shoes of the absorbed one. Once an existing bank takes the place of another bank after a merger, no further action is necessary to become a real party in interest in regard to its property.

(Internal quotations and citations omitted.) *PNC Bank, N.A. v. Bradford,* 5th Dist. Stark No. 2014CA00029, 2015-Ohio-4092, ¶ 27, quoting *Wells Fargo Bank v. Rennert,* 8th Dist. Cuyahoga No. 101454, 2014-Ohio-5292, ¶ 30.

{¶19} In the complaint, Citizens Bank described itself as "Citizens Bank, National Association, f/k/a Charter One a division of RBS Citizens, N.A." In Mr. Poirier's first affidavit in support of the motion for summary judgment, he indicated that Citizens Bank entered into the loan agreement with Ranch Road and that Ms. Schmitt and Mr. Ward provided personal guaranties for the obligation. Attached to the motion, was a copy of the complaint which included copies of the note, loan agreement, and guaranties.

{¶20} In response, Mr. Ward argued that Citizens Bank had failed to demonstrate it had standing because Ranch Road entered into a loan agreement with Charter One Bank, N.A., not Citizens Bank, and Citizens Bank had not submitted any evidence that it was the successor or assignee of Charter One Bank, N.A.

{¶21} In reply, Citizens Bank submitted a second affidavit from Mr. Poirier. In that affidavit, Mr. Poirier averred that

[Citizens Bank] is the owner and holder of the loan documents subject of this action and attached to the Complaint, including, without limitation, the promissory note. [] On or about September 1, 2009, Charter One Bank merged into and became a division of RBS Citizens, N.A., which, on or about April 16, 2014 changed its name to Citizens Bank, N.A. This series of events is consistent with the fashion in which Plaintiff, Citizens Bank, N.A., f/k/a Charter One, a division of RBS Citizens, N.A. has identified itself throughout this action. [] In order to further evidence that [Citizens Bank] has proper standing to bring the above-captioned action as the holder of the loan documents attached to the Complaint and subject of this action, see Exhibits 1-3 attached hereto, which are filings of public record.

**{¶22}** Exhibit 1 is a document from the National Information Center and indicates that on September 1, 2007,[1] Charter One Bank, National Association was acquired by RBS Citizens, National Association. That same day, Charter One Bank, National Association was renamed "Charter One Main Off" and became a branch of Citizens Bank, National Association. Exhibits 2 and 3 are documents from the Office of the Comptroller of the Currency. Exhibit 3 indicates that, effective April 16, 2014, the title of RBS Citizens, National Association was changed to Citizens Bank, National Association.

**{¶23}** Mr. Ward never objected to the trial court's consideration of any evidence Citizens Bank submitted as part of its reply brief, nor did he move to strike any of the evidence. Given the limited argument Mr. Ward has made on appeal, we cannot conclude the trial court erred in concluding that Citizens Bank was the proper party to enforce the note and guaranty. *See McCormick,* 2014-Ohio-1393, at ¶ 8; *Bradford*, 2015-Ohio-4092, at ¶ 27.

**{¶24}** Mr. Ward's third assignment of error is overruled.

---

[1] We acknowledge that the year, 2007, listed in the exhibit, does not match the year stated in Mr. Poirier's second affidavit (2009). However, Mr. Ward has never presented this discrepancy as an issue, nor does it appear that it would affect Citizens Bank's claim of standing.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN FAILING TO REVIEW CLOSELY EXHIBIT 4 IN EACH AFFIDAVIT OF JOHN POIRIER. BOTH THE AFFIDAVIT OF JULY 30, 2015 AND ITS ATTACHED EXHIBIT 4 AND THE SUBSEQUENT AFFIDAVIT OF JOHN POIRIER DATED SEPTEMBER 24, 2015 AND ITS EXHIBIT 4. EACH OF THE EXHIBITS ARE TO BE THE ACCOUNTING FOR THE PAYMENTS AND ALLOCATIONS OF BOTH INTEREST AND PRINCIPAL ON THE LOAN AND EACH ARE INACCURATE IN THE CALCULATIONS THAT THEY SET FORTH, IN THAT THEY DO NOT PROPERLY ACCOUNT FOR THE REDUCTION IN PRINCIPAL WITH THE PAYMENT OF EACH MONTHLY PAYMENT.

{¶25} Mr. Ward essentially asserts in his first assignment of error that the trial court erred in granting summary judgment to Citizens Bank because the exhibits demonstrating the payment history of the account are not accurate. He asserts this claim is further supported by an email from Citizens Bank of Pennsylvania. There does not appear to be any dispute that Ranch Road made regular monthly payments throughout the course of the loan. Nor does there appear to be a dispute that a default interest rate was applied from February 2013 until May 2014, after Ms. Schmitt failed to supply financial information. Finally, there does not appear to be a dispute that in October 2014, the loan matured and Ranch Road failed to pay off the balance due. Thus, Mr. Ward's argument centers on whether the amount due, as reflected on the payment histories, was accurate.

{¶26} "[A] creditor need not proceed against a principal debtor before pursuing a guarantor who has given an absolute guaranty; however, the guarantor is only liable on the absolute guaranty upon the default of the primary debtor." *Medina Supply Co., Inc. v. Dig It Foundations, Ltd.,* 9th Dist. Summit No. 20685, 2002 WL 500340, *3 (Apr. 3, 2002), quoting *Mihalca v. Malita,* 9th Dist. Summit No. 19395, 2000 WL 372309, *4 (Apr. 12, 2000). "[A] breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed

to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach." (Internal quotations and citations omitted.) *Brunke v. Ohio State Home Servs., Inc.,* 9th Dist. Lorain No. 13CA010500, 2015-Ohio-2087, ¶ 22.

{¶27} In support of its motion for summary judgment, Citizens Bank offered the affidavit of Mr. Poirier, a "workout officer" of Citizens Bank. In the affidavit, Mr. Poirier averred that Citizens Bank loaned Ranch Road $267,435 on October 4, 2004, Mr. Ward and Ms. Schmitt personally guaranteed the loan, the loan matured on October 4, 2014, and the loan was not repaid upon maturity. Mr. Poirier asserted that Citizens Bank had properly credited all payments to the account and attached a payment history to the affidavit (Exhibit 4). Also attached to the affidavit was a copy of the complaint, which included a copy of the note, loan, and guaranties. Copies of the parties' answers and attached filings were also included as exhibits. Mr. Poirier further indicated that as of June 11, 2015, $254,079.17 was due and owing, comprised of $215,322.91 in principal, $9,328.84 in interest, $22,387.42 in late charges, and $7,040 in legal expenses. According to Mr. Poirier, Citizens Bank had demanded payment, but Ranch Road, Mr. Ward, and Ms. Schmitt failed to pay.

{¶28} In responding to the motion for summary judgment, Mr. Ward argued that there was a dispute of fact with respect to the amount due and owing. In support of that argument, Mr. Ward pointed to an email from "Citizens Bank of Pennsylvania" discussing billing issues and the fact that Citizens Bank's records of payments only reflected payments beginning in July 2005, despite payments being due beginning in November 2004. Mr. Ward argued that, assuming Ranch Road was making timely payments beginning in November 2004, the balance of principal and interest would be different than what was reflected on the payment history that was Citizens Bank's exhibit. Mr. Ward also submitted an affidavit averring that Ranch Road made all

monthly payments when due, that he was advised in February 2013 that a default interest rate of 10.99% was being applied to the loan due to the failure of Ms. Schmitt (Mr. Ward's ex-wife) to supply updated financial information to the lender, and that he had "good faith doubts" that the lender properly applied payments to the account.

{¶29}  Citizens Bank filed a reply and included a second affidavit from Mr. Poirier.  Mr. Poirier averred that, in 2005, Charter One Bank, N.A. converted its internal loan servicing system and that that conversion "resulted in certain account transaction histories not being captured for the period prior to the on-boarding of the successor loan servicing system."  Mr. Poirier indicated that the payment history attached to his prior affidavit was produced from that system and that was why some of the data was missing.  To clarify the matter, a new complete payment history was compiled and attached to the new affidavit.  Mr. Poirier did not deny that the email from Citizens Bank of Pennsylvania was from Citizens Bank, instead indicating that the email noted that "a billing modification [was made] in connection with the implementation of default interest."  Mr. Poirier maintained that all payments were credited to the balance of the loan.

{¶30}  As Citizens Bank does not appear to dispute that the email from Citizens Bank of Pennsylvania came from Citizens Bank, we will consider whether Mr. Ward has demonstrated that it created a genuine issue of material fact.  The email, dated November 25, 2013, submitted in opposition to the motion for summary judgment provides as follows:

> So you are aware, the default rate of interest you have been paying has been billed incorrectly.  Your monthly payment did not change as far as total payment goes.  The interest increased and the principal amount was decreased, however this is incorrect.  I am having this changed to reflect the same principal payment you should have been paying with the interest payments to increase so you will notice the total payment will be higher going forward.  This will be reflected as of today and going forward.  It shall not be back dated.

Once all information is received and reviewed, we can determine if the default rate of interest can be removed. Can you provide the remaining information?

I still need your 2012 tax return, an updated rent roll and [Ms. Schmitt's] financial info.

This loan matures in Oct. 2014. Have you begun looking at new lenders to refinance this loan without Ms. Schmitt as a guarantor since that seems to be the ongoing issue with providing financial information?

{¶31} In the trial court, Mr. Ward asserted that the email indicated that Ranch Road was "billed * * * the wrong interest rate and [that the lender] incorrectly applied [Ranch Road's] monthly payments to the account." While the email itself is somewhat confusing, when considered in light of the two payment histories provided by Mr. Poirier and Mr. Ward's affidavit, the email appears to be an attempt to inform Mr. Ward that Ranch Road had been *under billed* in light of the application of the default interest rate. We note that the plain language of the email does not state that Ranch Road was paying an incorrect *rate* of interest or that payments had been misapplied.

{¶32} The payment histories reflect that as of February 28, 2013, the interest rate was increased from 5.99% to 10.99%. Mr. Ward averred in his affidavit that, in February 2013, he was advised that the default interest rate of 10.99% was being applied to the note because Ms. Schmitt has failed to update her financial information. The payment histories reflect that from February 2013 through November 20, 2013, the monthly payment amount remained at $1,721.40 (the regular payment amount). During this time, the accrued interest began to accumulate. However, beginning in December 2013, shortly after the email was sent to Mr. Ward, and throughout the remainder of the time that the default interest rate was applied, the monthly payments increased to $2,427.29. This corresponded to a gradual decrease in the accrued interest. Ultimately, in May 2014, after the original interest rate was again applied, the accrued

interest was eliminated and portions of the payment were again applied to reduce the principal balance.

{¶33} Given the vagueness in the email, the fact that the plain language of the email does not support Mr. Ward's interpretation, and that the other summary judgment evidence supports Citizens Bank's interpretation, we cannot conclude that the email creates a genuine issue of material fact. The payment histories support the conclusion that the email was intended to inform Mr. Ward that Citizens Bank had been under billing Ranch Road in light of the higher default interest rate and that the bank planned to rectify the issue going forward. Subsequent to that email, Ranch Road's monthly payments did increase. Mr. Ward supplied no other evidentiary materials to clarify the email or to support his claim that the email evidenced that Citizens Bank was charging an incorrect interest rate or misapplying Ranch Road's payments. Accordingly, we see no merit in his argument.

{¶34} Mr. Ward also challenges the payment histories attached to Mr. Poirier's affidavits. Mr. Ward argues that the first payment history was incomplete as it began with July 2005, despite payments beginning in November 2004. He also notes that that payment history indicates that as of July 1, 2005, no money had been applied to principal and $7,955.96 had been applied towards interest. Mr. Ward maintains that the interest paid should have been higher and some money should have been applied towards principal as Ranch Road had made all of its monthly payments.

{¶35} Nonetheless, this issue is resolved by the second payment history submitted along with Mr. Poirier's second affidavit.[2] As noted above, Mr. Poirier explained in his second

---

[2] We again note that Mr. Ward never argued that the additional materials submitted in support of the reply brief, including the second payment history, should not have been considered by the trial court.

affidavit why the first payment history was incomplete.  The second payment history begins with October 2004 and lists the correct original amount of the loan:  $267,435.  It continues on and includes the payments included on the first payment history.  From December 2004 through June 2005, the second payment history reflects that payments were being applied to both interest and principal.  In total, from November 2004 through June 2005, $2,479.71 was credited towards principal, which would result in a principal balance of $264.955.29, which is the amount listed on the first payment history as the "advanced amount[.]"  The second payment history reflects interest payments totaling $11,291.49 from November 2004 through June 2005.  Therefore, the significance of the line on the first payment history that indicates $7,955.96 of interest was paid as of July 1, 2005 is unclear.  It does appear that that first line on the first payment history is inaccurate in that it reflects an incorrect amount of principal and interest paid.  However, aside from that line, the first and second payment histories appear to be nearly identical and the second payment history does reflect payments for the history of the loan.

{¶36}  Mr. Ward also argues that payments to principal were not reflected from February 28, 2013 through September 20, 2014.  While it is true that during some parts of this period, payments were not being applied to principal, this period corresponds to the time when the default interest rate applied and accrued interest and interest for the period exceeded the monthly payment. Moreover, beginning in May 2014, when the regular interest rate was reinstated, portions of the payments were again being credited to principal.  Accordingly, there was a reason why payments during part of this period were not being applied to principal.  Mr. Ward has not

demonstrated that such application breached any term of the note or loan agreement[3] and has not presented evidence that Citizens Bank should have applied any portion of the aforementioned payments towards the principal balance. There is nothing in the record that suggests that Citizens Bank misapplied the payments at issue. Further, to the extent Mr. Ward claims that principal was not reduced from May 2014 through September 2014, he is mistaken. The payment histories indicate that portions of those payments were in fact applied to principal.

{¶37} Given Mr. Ward's arguments, we conclude that the trial court did not err in concluding that no genuine issue of material fact remained and that Citizens Bank was entitled to summary judgment as a matter of law. Mr. Ward has not demonstrated that a genuine issue of material fact exists with respect to the amount due and owing. Mr. Ward's first assignment of error is overruled.

### III.

{¶38} Mr. Ward's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

---

[3] The note states that "[a]ny payments received by the Bank on account of this Note shall, at the Bank's option, be applied first, to accrued and unpaid interest; second to the unpaid principal balance hereof; third to any costs, expenses or charges then owed to the Bank by the Borrower; and the balance of escrows, if any. Notwithstanding the foregoing, any payments received after the occurrence and during the continuance of an Event of Default shall be applied in such manner as the Bank may determine."

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.


APPEARANCES:

FRANK J. CIMINO, Attorney at Law, for Appellant.

CHRISTOPHER P. SCHUELLER and TIMOTHY P. PALMER, Attorneys at Law, for Appellee.